IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JIRI MASOPUST, )<br>)<br>        Petitioner )<br>)<br>vs. )<br>)<br>THOMAS FITZGERALD, U.S. Marshal )<br>for the Western District of Pennsylvania; )<br>ERIC HOLDER, Attorney General of the )<br>United States; and HILLARY RODHAM )<br>CLINTON, Secretary of State of the )<br>United States, )<br>)<br>        Respondents ) | No. 2:09-cv-1495-ARH |

## **MEMORANDUM OPINION**

HAY, Chief Magistrate Judge

      Jiri Masopust ("Masopust" or "the Petitioner"), a Czech Republic national, petitions this Court for "a writ of habeas corpus pursuant to §§ 2241 and 2243." (Doc.1). He also requests "declaratory and injunctive relief as to remedy his prospective and unlawful detention" in connection with extradition proceedings, and to prevent the government from violating his constitutional rights by ordering his extradition. (Id.). Specifically, Masopust asks that the Secretary of State be enjoined from extraditing him prior to resolution of asylum claims filed in concurrent removal proceedings pending before the Immigration Court in Philadelphia, Pennsylvania. (Doc.1 at 7). He also asks that the extradition proceedings be indefinitely suspended or terminated should the Immigration Court find that his torture related claims have merit. (Id.).

      **Background**

      The salient facts are undisputed. On June 16, 1998, Masopust entered this country under a B-2 visitor's visa, but failed to depart when the visa expired in December 1998. Because of this

overstay, removal proceedings were initiated. In June 2009, while removal proceedings were pending, the government filed a Complaint in the District Court for the Western District of Pennsylvania on behalf of the Czech Republic. In the Complaint, the government sought to have Masopust, who has been charged by Czech authorities with fraud and misappropriation of funds, extradited pursuant to a treaty between the United States and the Czech Republic. On July 10, 2009, removal proceedings before the Immigration Court were stayed pending resolution of the extradition proceedings.

Following his initial appearance before a Magistrate Judge in this District, Masopust was detained pursuant to an Order of Temporary Detention, and, on July 9, 2009, was ordered detained after waiving a detention hearing. On October 8, 2009, the Petitioner, with counsel present, executed an Affidavit admitting that he was wanted in the Czech Republic, and that there was probable cause to believe that he had committed the offenses alleged. On the same date, he waived an extradition hearing, acknowledging that he would remain in the custody of the United States Marshal at the Allegheny County Jail pending a final extradition determination by the Secretary of State pursuant to 18 U.S.C. §§ 3185 et seq. At the conclusion of the proceedings, the Magistrate Judge issued a Certification of Extraditability which was filed with the Secretary of State and the Office of International Affairs, Criminal Division, U.S. Department of Justice.

On October 19, 2009, Masopust filed in the Immigration Court a Form I-589 Application for Asylum and Withholding of Removal, claiming protection pursuant to Article 3 of the Convention Against Torture ("CAT"). [1] In the Application, he alleged that his business was indebted to

---

[1] This Article provides, without exception, that "[no] State Party shall expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." Sen. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85. The Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), codified as a note to 8 U.S.C. 1231, "was enacted by Congress to give Article 3 of CAT 'wholesale effect' domestically." Khouzam v. Attorney Gen., 549 F.3d 235, 241 (3d Cir. 2008) (quoting Medellin v. Texas, 552 U.S. 491, 128 S.Ct. 1346, 1365 (2008)).

multiple individuals, some of whom had hired collection agencies run by "Russian thugs" or "Czechs that would . . . send very intimidating men after him." (Doc. 1 Ex. 1 at 10). Masopust claimed that he had been harassed, threatened, strong-armed, beaten, and forced "to leave the Czech Republic to save his life." (Id.). The Petitioner asserts that on the date of that filing, he mailed copies of the I-589 Application to the "U.S. Attorney and the Secretary of State." (Id. at 16). According to Masopust, he filed this habeas petition on November 6, 2009, in response to the Immigration Court's statement that "although it obviously [could] adjudicate [his] I-589 CAT claim, it lacks jurisdiction to issue any order compelling the Secretary of State to suspend extradition while [his] claim is pending in Immigration Court." (Doc 1 at ¶ 19). Because of the stay entered in the removal proceedings, the Immigration Court has not considered Masopust's Application.

In an affidavit filed with his reply brief, Masopust alleges that on November 10, 2009, he was told that he was being extradited. (Doc.10 Ex. 1). He was then escorted from the Allegheny County Jail to the Pittsburgh International Airport, and placed on a plane. Prior to departure, however, he was removed from the plane and returned to the Allegheny County Jail. (Id.). He contends that his extradition was aborted as a result of his having filed the habeas petition. He also alleges that the November 10 events establish that the Secretary of State "has made a final agency decision to physically extradite" him. (Doc.10 at 2). [2]

---

[2] The government disputes this contention, stating that "the Department of [S]tate did not receive the letter dated November 5, 2009 from Masopust's attorney, which requested a stay of extradition, until November 20, 2009." (Doc. 11 at 3 n.1). The government contends that when the Petitioner was placed aboard a plane, the State Department was unaware that he had asserted or intended to assert a CAT claim. The government has agreed not to extradite Masopust while this Petition is pending. (Doc. 9 at 5 n.3).

**Discussion**

At the outset, the Court notes that the Petitioner has not cited - and the Court has not found - *any* authority for the proposition that this Court may order a halt to an ongoing extradition proceeding in order to accommodate the Petitioner's preference that his CAT claim be adjudicated by the Immigration Court. The governing statutory framework, the implementing regulations and the associated case law explain this dearth of authority.

In the seminal 1963 case decided by the Board of Immigration Appeals ("BIA"), Matter of Perez-Jiminez, 10 I. & N. Dec. 309, the respondent, who was subject to both extradition and deportation proceedings, claimed in the course of each that the political climate in his home country was "decidedly adverse to him." Id. at 312. He sought to have this claim resolved in the deportation - as opposed to the extradition - proceedings, pointing to "the established regulations and procedures and the avenues for judicial review." Id. While he did "not suggest[ ] that he would not receive due process of law at the hands of the Secretary of State, [he argued] that there are no regulations governing the Secretary of State's action and that the procedures are less tested and more nebulous than those in deportation proceedings." Id.

In response to this argument - which is substantially similar to the one raised here by Masopust - the BIA stated that deportation and extradition proceedings are "related in their effect of removing a person from the country," but "are independent in the sense that the proceedings under each are separate and distinct and . . . a decision in one is not necessarily dependent upon the findings in the other." Id. "Where the proceedings are parallel, therefore, one should be cognizant of the other." Id. The BIA thus held that "[o]rderly procedure requires deferral of [the deportation proceedings] until a final decision is rendered in the extradition case" Id. at 314. Deferral avoids complicating the extradition process and, furthermore, the alternate proceedings "would actually

have served no useful purpose" following the issue of an extradition warrant." Id. at 313-14. "Courts have generally accepted the BIA's suspension of asylum proceedings pending the completion of the extradition process" without comment. Barapind v. Reno, 225 F.3d 1100, 1107 (9th Cir. 2000) (citations omitted). The Immigration Court's entry of a stay in this case accords with the general rule.

Masopust nonetheless challenges the deferral, arguing that the due process clause precludes his extradition "until there has been an adjudication, *in removal proceedings* of [his] CAT claims." (Doc. 1 at ¶ 14) (emphasis added). His argument that the extradition proceedings must be stayed is based, in part, on Section 2242(a) of FARRA, which is, in effect, identical to Article 3 of the CAT:

> It shall be the policy of the United States not to expel, extradite or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States.

Masopust also relies on the following excerpt from the opinion of Court of Appeals for the Third Circuit in Khouzam v. Attorney Gen. of United States, 549 F.3d 235 (3d Cir. 2008):

> Prior to removal on the basis of diplomatic assurances, [the alien] must be afforded notice and an opportunity to test the reliability of those assurances in a hearing . . . The alien must have an opportunity to present, before a neutral and impartial decisionmaker, evidence and arguments challenging the reliability of diplomatic assurances proffered by the Government, and the Government's compliance with the relevant regulations. The alien must also be afforded an individualized determination of the matter based on a record disclosed to the alien.

(Id. at 259).

The decision in Khouzam does not support the Petitioner's argument. Khouzam was decided in the context of the Department of Homeland Security's attempt to terminate a deferral of *removal*. This termination was based on diplomatic assurances received from a foreign government

5

that Khouzam would not be tortured upon repatriation.  The Court of Appeals has clarified that the law recognizes a distinction between removal proceedings, which relate to a violation of immigration laws - such as Masopust's overstay of a visa - and extradition proceedings stemming from criminal charges such as those filed against Masopust in the Czech Republic.  See Khouzam, 549 F.3d at 253.  Because extradition is an executive function, where extradition proceedings are ongoing, courts have authority to conduct only a "limited inquiry," [3] restricted to whether a magistrate judge acted in accordance with the law in issuing a Certificate of Extraditability.  Sidali v. INS, 107 F.3d 191, 195 n.7 (3d Cir. 1997). [4]  In extradition proceedings,

> the Secretary of State conducts an independent review of the case to determine whether to issue a warrant of surrender. 18 U.S.C. § 3186. The Secretary exercises broad discretion and may properly consider factors affecting both the individual defendant as well as foreign relations - factors that may be beyond the scope of the magistrate judge's review.

Id.

Neither CAT nor FARRA limits the discretion reserved to the Secretary of State in making extradition decisions.  State Department regulations issued pursuant to FARRA establish that the Secretary of State is "the U.S. official responsible for determining whether to surrender a fugitive . . . by means of extradition." 22 C.F.R. § 95.2 (b).  Where there has been a torture related claim, "appropriate policy and legal officers [shall] review and analyze information relevant to the case

---

[3] This limitation stems from the common law doctrine of "non-inquiry."  See Mironescu v. Costner, 480 F.3d 664, 668-70 (4th Cir. 2007) (tracing history of doctrine).  Under this rule, "such humanitarian considerations are with the purview of the executive branch and generally should not be addressed by the courts in deciding whether a petitioner is extraditable."  Hoxha v.Levi, 465 F.3d 554, 563 (3d Cir. 2006) (citing Sidali, 107 F.3d at 195 n.7).  This "serves interests of international comity by relegating to political actors the sensitive foreign policy judgments that are often involved in the question of whether to refuse an extradition request."  Id. (citations omitted).  See also Khouzam, 549 F.3d at 253 (stating that "doctrine [also] bars courts from evaluating the fairness and humaneness of another country's criminal justice system, requiring deference to the Executive Branch on such matters") (citations omitted).

[4] Masopust does not challenge any aspect of the proceedings before the Magistrate Judge.

[and prepare] a recommendation to the Secretary as to whether . . . to sign the surrender warrant." 22 C.F.R. § 95.3 (a). [5]  "The broad range of options available to the Secretary [considering whether to order extradition] includes (but is not limited to) . . . refusing extradition on a number of discretionary grounds, including humanitarian and foreign policy considerations, granting extradition with conditions, and using diplomacy to obtain fair treatment for the fugitive." Mironescu v. Costner, 480 F.3d 664, 666 (4th Cir. 2007) (citing United States v. Kin-Hong, 110 F.3d 103, 109-10 (1st Cir. 1997)).  Extradition decisions of the Secretary of State "are matters of executive discretion not subject to judicial review."  22 C.F.R. § 95.4.  In Hoxha v. Levi, 465 F.3d 554, 564 (3d Cir. 2006), the Court of Appeals for the Third Circuit confirmed that FARRA did not displace the no inquiry rule or the Secretary of State as the ultimate decision maker in extradition proceedings.

The foregoing discussion establishes that where CAT claims are raised in removal and extradition proceedings, the authority to make the extradition determination and to evaluate torture-related claims belongs, in the first instance, to the Secretary of State.  Whether a final decision by the Secretary ordering extradition is reviewable and, if so, by what legal means, are questions left open in Hoxha, and are premature here, as well.  Those questions will not be ripe for consideration until the Secretary has reviewed Masopust's CAT claims and made a final decision to surrender him for extradition.

**Conclusion**

The Court finds that the removal proceedings were properly deferred pending the Secretary of State's resolution of the extradition proceedings.  The Court also finds that it lacks authority to

---

[5] The government has represented to the Court that the Department of State has notice of "Masopust's claim of possible torture should he be extradited, [and] . . . will consider any materials which [he] wishes to submit in support of that claim.  In other words, the Department of State will consider his claim as it would any other fear of torture claim in an extradition case." (Doc. 11 at 3).

consider Masopust's CAT claims, or to enjoin the State Department's consideration of those claims. The Court will, therefore, deny Masopust's petition for a writ of habeas corpus and his claims for injunctive and declaratory relief.  An appropriate Order follows.

        By the Court,

        /s/ *Amy Reynolds Hay*          , J.
        Chief Unites States Magistrate Judge

Dated:   21 January, 2009

cc:       Counsel of Record via CM-ECF